NO. 23-1568

# United States Court of Appeals

*for the*

# Fourth Circuit

---

CARMEN WANNAMAKER-AMOS,

*Plaintiff-Appellant,*

– v. –

PUREM NOVI, INC., f/k/a Eberspaecher North America, Inc.,
d/b/a Eberspaecher Group and Purem by Eberspaecher,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA AT GREENVILLE IN CASE
NO. 6:21-CV-02359-KFM, HONORABLE KEVIN F. MCDONALD

## REPLY BRIEF OF APPELLANT

BRIAN P. MURPHY
STEPHENSON & MURPHY, LLC
207 Whitsett Street
Greenville, South Carolina 29601
(864) 370-9400

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.      DISCUSSION ........................................................................ 1

     A.      Purem Novi premises its arguments on disputed facts ........................ 1

         1.      The months of poor performance and failure-to-respond assertions ................................................................ 1

             a.      There is no undisputed evidence of months of subpar performance ........................................... 1

             b.      Hosseini's instruction to send a response that did not exist ............................................................ 2

         2.      Wannamaker-Amos was not responsible for Quality Assurance ............................................................... 4

         3.      Hosseini never discussed purported performance deficiencies with Wannamaker-Amos ........................ 5

         4.      The allegations in Hosseini's Supporting Evidences Doc ...................................................................... 6

             a.      The Quality Basics assertions ........................ 6

                 1.      Safe launch ........................................ 6

                 2.      First part inspection .............................. 7

                 3.      PFMEA not reviewed or updated .................. 7

                 4.      Control plan not updated ........................ 8

                 5.      Critical/Special characteristics monitoring ........... 9

                 6.      Redbox management ............................ 10

             b.      Other disputed issues with the Supporting Evidences Doc ............................................. 11

                 1.      Wannamaker-Amos's August audit .................... 11

                 2.      The significant damages lie .................... 12

B.    Legal Issues in dispute ........................................................13

1.    The inherent conflicts in the prima facie and pretext findings.........................................................................13

2.    Purem Novi seeks to establish an unprecedented new element for discrimination claims.............................15

3.    Purem Novi's prima facie argument ........................18

4.    Pretext issues......................................................20

a.    Purem Novi inappropriately argues pretext plus............20

b.    Purem's "super personnel department" argument..........21

c.    Wannamaker-Amos has provided sufficient evidence that she did not fail to respond to Hyundai...........................................................23

d.    Purem Novi cannot explain away the falsity of its assertion about the production logs ...........................23

e.    Purem Novi's sleight of hand cannot explain away its claim that Wannamaker-Amos caused it to ship bad parts................................................24

f.    Purem Novi cannot distinguish *Cowgill* or this Court's other authorities on pretext..............................25

g.    Purem Novi's argument that Hosseini was not building a file................................................................27

h.    Purem Novi's stray remark argument............................28

II.    CONCLUSION...................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................20

*Burton v. Freescale Semiconductor, Inc.*,
798 F.3d 222 (5th Cir. 2015) ...............................................23

*Carter v. Telecare Corp.*,
No. CV 18-10748-RGK (PLAx), 2019 U.S. Dist. LEXIS 215165
(C.D. Cal. Aug. 16, 2019) ......................................................15

*Castro v. DeVry Univ., Inc.*,
786 F.3d 559 (7th Cir. 2015) ...............................................23

*Cowgill v. First Data Techs., Inc.*,
41 F.4th 370 (4th Cir. 2022) ................................................26

*Dejarnette v. Corning, Inc.*,
133 F.3d 293 (4th Cir. 1998) ...............................................21

*Dejarnette v. Corning, Inc.*,
203 F.3d 274 (4th Cir. 2000) ...............................................22

*EEOC v. Sears Roebuck & Co.*,
243 F.3d 846 (4th Cir. 2001) ...............................................23

*EEOC v. Town & Country Toyota, Inc.*,
7 F. App'x. 226 (4th Cir. 2001) ...........................................13

*Haynes v. Waste Connections, Inc.*,
922 F.3d 219 (4th Cir. 2019) ....................................... 21, 23

*Hiramoto v. Goddard Coll. Corp.*,
184 F. Supp. 3d 84 (D. Vt. 2016).........................................15

*Jones v. National Am. Univ.*,
608 F.3d 1039 (8th Cir. 2010) .............................................23

*Kelleher v. Fred Meyer Stores, Inc.*,
No. CV-13-3108-SMJ, 2015 U.S. Dist. LEXIS 10576
(E.D. Wash. Jan. 28, 2015) ..................................................15

iii

*Lange v. Anchor Glass Container Corp.*,
No. 22-2902, 2023 U.S. App. LEXIS 17453 (7th Cir. July 11, 2023) ...............23

*Monroe v. Burlington Indus.*,
784 F.2d 568 (4th 1986)....................................19

*Nichols v. Ashland Hosp. Corp.*,
251 F.3d 496 (4th Cir. 2001) ....................................22

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998)....................................28

*Pelkey v. White Oak Mgmt.*,
Civil Action No. 0:18-00967-JMC, 2020 U.S. Dist. LEXIS 45321
(D.S.C. Mar. 13, 2020) ....................................16

*Reeves v. Sanderson Plumbing Prods.*,
530 U.S. 133 (2000)....................................20

*Rowe v. Marley Co.*,
233 F.3d 825 (4th Cir. 2000) ....................................20

*Rowland v. Am. Gen. Fin., Inc.*,
340 F.3d 187 (4th Cir. 2003) ....................................28-29

*Sempowich v. Tactile Sys. Tech., Inc.*,
19 F.4th 643 (4th Cir. 2021) ....................................21, 22

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993)....................................14, 22

*Texas Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981)....................................14

*Westmoreland v. TWC Admin. LLC*,
924 F.3d 718 (4th Cir. 2019) ....................................20, 21, 22, 26

*Worldwide Network Servs., LLC v. DynCorp Int'l, LLC*,
365 F. App'x 432 (4th Cir. 2010) ....................................29

## I.  DISCUSSION

### A.    Purem Novi premises its arguments on disputed facts.

#### 1.    The months of poor performance and failure-to-respond assertions

Ultimately, Purem Novi's summary judgment efforts hinge on two assertions: (1) that Wannamaker-Amos persistently failed at her job, and (2) that she did not send a completed countermeasure to Hyundai.[1]  Wannamaker-Amos has already refuted both.[2]  Purem Novi's latest arguments change nothing.

##### a.    There is no undisputed evidence of months of subpar performance.

Purem Novi's "months of subpar performance" assertion relates solely to Hosseini's assertions in the Supporting Evidences Doc (JA45-51) about issues that

---

[1]    *See*, *e.g.*, Resp. Br. at 3 ("Wannamaker-Amos's employment was terminated after months of subpar performance culminated in her complete failure to respond to a critical customer quality issue – a failure that she neither disputes nor disowns."); *id.* at 13 (stating that Hosseini, Wannamaker-Amos and others developed a response to Hyundai that Wannamaker-Amos failed to send); *id.* at 14 ("Wannamaker-Amos's employment was terminated for her failure to respond to Hyundai as required."); *id.* at 22 (referring to the purported response and stating that Purem Novi faults Wannamaker-Amos "for her failure to ever provide it."); *id.* at 38 (arguing that "there is no dispute that it was Wannamaker-Amos who ultimately failed to respond").

[2]    App. Br. at 5, 9, 12-22, 25, 40-43 (performance); *id.* at 10-12, 22-23, 36-38 (Hyundai response).

Wannamaker-Amos's page citations to her initial brief ("App. Br.") and to Purem Novi's response ("Resp. Br.") are to the actual page numbers of the briefs, not to the ECF pages.

allegedly occurred before the Hyundai response issue. Because Wannamaker-Amos refuted Purem-Novi's claims, Purem Novi now argues that none are material. Resp. Br. at 21 (stating that they "are not material, and any inconsistencies in the parties' portrayal thereof does not create a genuine issue of *material* fact.") Purem Novi cannot have it both ways: Arguing on the one hand that there is no issue as to whether Wannamaker-Amos had "months of subpar performance," while also arguing that evidence of it it doesn't matter. It matters because Hosseini based his termination decision on these assertions. JA43. Purem Novi's efforts to wiggle out of them underscore the fact that Purem Novi never was entitled to judgment.

### b.    Hosseini's instruction to send a response that did not exist

Purem Novi refers to the countermeasure response as the "last straw." Resp. Br. at 38.[3] Purem Novi again relies on disputed issues of fact by stating that Wannamaker-Amos was responsible for responding to Hyundai about the missing pipe. Resp. Br. at 21 ("Wannamaker-Amos testified that it was her responsibility to respond to Hyundai.") (citing JA521); *id. at 22* (citing same). As to this issue, the cited testimony does not support Purem Novi's claim.

---

[3]      Purem Novi asserts correctly that Wannamaker-Amos did not identify a clean point on December 19. Resp. Br. at 11, 22 (3rd bullet). Only later does Purem Novi clarify that "Wannamaker-Amos is not being faulted for failing to provide the clean point serial number on December 19, 2019." Resp. Br. at 22.

The testimony on JA521 is about Wannamaker-Amos's normal duties. It is not specific to the countermeasure for the Hyundai missing pipe complaint. The question was far more general: "And if a customer is saying, 'I need a response,' providing that response and meeting that requirement is your responsibility." JA521:22-24. That is generally true.

It also is true that Wannamaker-Amos dealt with Hyundai regarding issues regularly, and even did so about the missing-pipe situation. As for the countermeasure for the missing pipe situation, Hosseini insisted on being involved since Hyundai complained to him. App. Br. at 11-12. Purem Novi knew there was there no countermeasure to send, and it knew that the data did not exist to create one. App. Br. at 36-38.

As even the District Court recognized: (1) Wannamaker-Amos "did not have the information she needed yet from Alabama," and (2) "she was never instructed to send the response to Hyundai's email." JA729; see also JA162 ¶ 43; JA163 ¶¶ 45, 48, 50; JA164¶ 54, 58, 60-61. That evidence precludes summary judgment on the key issues identified by Purem Novi. App. Br. 10-12.

Purem Novi insists that Wannamaker-Amos cannot support her claim that Hosseini would direct the response. Resp. Br. at 46. Once again, Purem Novi trips over its assertions. Purem Novi obtained judgment based on the narrative that Wannamaker-Amos did not send a response that Hosseini drafted. Def. Mem. SJ

[DE 67] at 19 ("Wannamaker-Amos then chose not to send a response email . . . that Hossein generously assisted in drafting"); *id.* (stating that Wannamaker-Amos "could not even be bothered to send an email communication drafted for her"); see also Resp. Br. at 13 ("[T]he team, including Hosseini and Wannamaker-Amos, put together a response for Hyundai.  However, Wannamaker-Amos . . . .never sent the response.")  Purem Novi points to no "draft" or document that Hosseini and the team developed, and Hosseini never instructed Wannamaker-Amos to send one.  JA163-64 ¶¶ 49-50, 54, 60-61.  That is the key disputed issue of material fact.[4]

### 2.    Wannamaker-Amos was not responsible for Quality Assurance.

Wannamaker-Amos explained that she was not the quality manager and was not responsible for day-to-day quality control issues (*e.g.*, quality assurance).  App. Br. at 4-5.  Purem Novi counters with the proposition that everyone was responsible for quality.  Resp. Br. at 6 n. 1.  Purem Novi cannot, however, refute Wannamaker-Amos's showing that line managers and the quality manager are responsible for ensuring adherence to the systems implemented by Wannamaker-Amos.  App. Br.

---

[4]    Purem Novi's claim that Wannamaker-Amos's only response is that a form required upper management signature is patently false.  Resp. Br. at 29.  Wannamaker-Amos already addressed the confusion around this issue, which Wannamaker-Amos clarified during her deposition.  App. Br. at 37 n. 26.

at 4.[5]  Nor can Purem Novi refute Wannamaker-Amos's showing that she was unaware of any purported problem that Hosseini claims to have seen (but that he failed to mention at the time).  *See* App. Br. at 16-17.

Purem Novi's "everyone is responsible for quality" rationale raises more questions for the jury.  If "everyone" is indeed responsible, why was Wannamaker-Amos the only one singled out for something over which she had no control and about which she had no knowledge?

### 3.     Hosseini never discussed purported performance deficiencies with Wannamaker-Amos.

Wannamaker-Amos received no warnings, and Hosseini did not discuss concerns about the issues outlined in his Supporting Evidences Doc.[6]  Ignoring the summary judgment standard, Purem Novi insists that Hosseini spoke directly to Wannamaker-Amos about the issues raised in the Supporting Evidences Doc.  Resp. Br. at 12.  The parties agree that this issue is material, and there is no denying that the evidence is disputed.

---

[5]     For reasons that are not clear, Purem Novi discusses an unrelated quality complaint for which there is no assertion that Wannamaker-Amos did anything wrong.  Resp. Br. at 10-11.

[6]     App. Br. at 15 (safe launch); *id.* at 16-17 (first part inspection); *id.* at 18 (PFMEA); *id.* at 19 (control panel); *id.* at 20 (critical characteristics); *id.* at 20-21 (red box); *id.* at 21-22 (audit).

### 4. The allegations in Hosseini's Supporting Evidences Doc

### a. The Quality Basics assertions

The issues documented in the Supporting Evidences Doc are Hosseini's justification for terminating Wannamaker-Amos's employment. App. Br. at 13; JA43. Although Purem Novi now argues that the pre-response issues are immaterial, *supra* §I(A)(1)(a), it hedges its bets by making disputed contentions about them.

### 1. Safe launch

Purem Novi still contends that Wannamaker-Amos failed to have safe launch in place. Resp. Br. at 8-9. Purem Novi states that Hosseini asked on November 1st whether safe launch had been established. Resp. Br. at 17. Of course not, and everyone knows that safe launch should have been in place much earlier. App. Br. 14. Purem Novi rejected Wannamaker-Amos's request for safe launch, and only higher management can approve safe launch. *Id.* at 14-15. Hosseini, and everyone else, knew safe launch was not in place. *Id.* at 15-16.[7] Purem Novi offers no evidence to the contrary.

---

[7] Purem Novi still claims that Hosseini had been on site since August to focus on Hyundai quality issues on which he purportedly spent 70% of his time. Resp. Br. at 7-8. As Wannamaker-Amos already has pointed out, it would be impossible to devote such time and not immediately recognize the absence of safe launch. App. Br. at 154 n. 12.

6

## 2. First part inspection

Purem Novi still contends that Wannamaker-Amos failed to implement first-part inspection. Resp. Br. at 9. Purem Novi points out that Wannamaker-Amos claims the sample part should be on the table. Resp. Br. at 18. And it was there when Wannamaker-Amos saw it. App. Br. at 16-17; JA167 ¶ 81; JA168 ¶ 85. And Wannamaker-Amos did not "admit[] that the error occurred" as Purem Novi claims. Resp. Br. at 18. She only agreed that the part was not missing in the picture Hosseini took, and "[t]hat's all I can identify from this picture." JA481:1-2.

Purem Novi also responds that Hosseini would generally raise quality issues on walkthroughs. Resp. Br. at 9. Of course, Wannamaker-Amos and Hosseini generally discussed quality issues. But Hosseini never raised *this* concern, which is surprising if there had been an issue so significant as to warrant termination. App. Br. at 16-17.

## 3. PFMEA not reviewed or updated

Purem Novi claims that Wannamaker-Amos "outright mischaracterizes Hosseini's testimony in suggesting that the PFMEA was irrelevant to [Wannamaker-Amos's] performance." Resp. Br. at 18. Wannamaker-Amos did not say that

Hosseini testified the PFMEA was irrelevant to Wannamaker-Amos's performance. *See* App. Br. 17-19.[8]

Purem Novi also asserts: "When Wannamaker-Amos confirmed that she had not participated in any PFMEA updates, [Hosseini] knew that her control plan was correspondingly delinquent." Resp. Br. at 18-19. Hosseini never said that. Purem Novi cites only one piece of evidence: The Other Evidences Doc. And it says no such thing. See JA47.

### 4.    Control plan not updated

Purem Novi contends that "Wannamaker-Amos does not and cannot deny that she did not update the control plan after the PFMEA was edited, nor that the control plan that she did create back in May was 'incomplete" and 'not validated.'" Resp. Br. at 19 (citing JA47-48). Purem Novi continues to mis-state facts when claiming that "the control plan that [Wannamaker-Amos] did create in May was 'incomplete' and 'not validated.'" Resp. Br. at 19. These assertions fail because Wannamaker-Amos was not even involved with Hyundai in May. JA169 ¶ 90.

In the very excerpt of the document to which Purem Novi cites, Hosseini never says that Wannmaker-Amos created the control plan. He states: "the control plan

---

[8]    Wannamaker-Amos certainly contends that the PFMEA issue is not one of Purem Novi's actual reasons for terminating Wannamaker-Amos. But Hosseini never testified that it was irrelevant and Wannamaker-Amos never said he did. As previously noted, Purem Novi now argues for the first time that the issue is immaterial. Resp. Br. at 21.

not reviewed by Quality Engineer." JA48. Wannamaker-Amos has already addressed this assertion. App. Br. at 19-20. Again, none of this was an issue at the time. *Id.* at 19.

Purem Novi's latest arguments highlight more issues of fact that it cannot resolve. How was control plan incomplete? What "update" is Purem Novi contending Wannamaker-Amos failed to make? Purem Novi cannot say. More importantly, Hosseini never raised any concern at the time. JA169 ¶¶ 91-92.

### 5. Critical/ Special characteristics monitoring

Purem Novi now relies on Wannamaker-Amos's testimony that she is unsure if she ever completed the form. Resp. Br. at 9 (citing JA491). But Purem Novi does not dispute the lack of an automated gauge needed to complete the form. App. Br. at 20. Perhaps Purem Novi seeks to raise another disputed issue about the need for an automated gauge. *Compare* Resp. Br. at 19 *with* App. Br. at 20. But that would only merit a trial, it would not justify denying one.

Hosseini never questioned the critical characteristics form at the time. JA493:13-15. In fact, Hosseini never even looked at the form at the time. App. Br. at 20 n. 16. Purem Novi knew when it fired Wannamaker-Amos that she had done nothing wrong.

**6.      Redbox management**

Purem Novi misrepresents Wannamaker-Amos's testimony in stating that having red box management in place would prevent parts from being on the floor. Resp. Br. at 9-10 (citing JA 494-95).  Wannamaker specifically answered "no" when asked that, and she explained that red box management requires compliance by production.  JA494:16-21.

Purem Novi is also incorrect in stating that Wannamaker-Amos "has no recollection as to whether red box management . . . was implemented on the UCC and WCC lines as of October 2019."  Resp. Br. at 9 (citing JA493).  Wannamaker-Amos knew Purem Novi implemented red box management on one of the lines. JA493:19-21.  She could not remember if Purem Novi implemented it on both lines in October.  JA493:25.  Production of the two products (WCC and UCC) began at different times and, three years after the fact, Wannamaker-Amos could not recall the dates on which production started on the different lines.  JA472:16 – JA473:17.

Purem Novi also now claims that no red box management was in place.  Resp. Br. at 20.  That assertion is disputed and, indeed, frivolous.  App. Br. at 20-21.

Purem Novi recognizes that the parties have offered conflicting evidence about whether Hosseini raised concerns about red box management implementation. Resp. Br. at 20 ("[C]ontrary to her assertion in her Opening Brief, Hosseini did raise the issue with Wannamaker-Amos.").      After acknowledging the evidence is

10

conflicting, Purem Novi releases another red herring. Purem Novi points out that Wannamaker-Amos recalls discussing red box management. Resp. Br. at 10 (citing JA471). That proves nothing. Wannamaker-Amos testified that she does not recall *Hosseini* raising any issues, but she discussed red box issues with others during her employment. JA47:17 – JA48:1. None of these discussions relate to any issues cited by Hosseini as grounds for termination. JA170 ¶ 95. Of course, Wannamaker-Amos discussed red box management during her employment. The issue is whether Hosseini made the assertions in the Other Evidences Doc to Wannamaker-Amos. Wannamaker-Amos has provided evidence that he did not. JA170 ¶¶ 97-98.

### b.     Other disputed issues with the Supporting Evidences Doc

### 1.     Wannamaker-Amos's August audit

Purem Novi again complains about an August 2019 audit that it never discussed with Wannamaker-Amos. Purem Novi, for example, never pushed back on Wannamaker-Amos giving scores of 10 where production had done what they could with the equipment available. App. Br. 21-22; see Resp. Br. at 8.

Instead, Purem Novi creates even more issues with statements like: "Hosseini described in great detail, the issue with the audit is that it did not 'make sense.'"

11

Resp. Br. at 20-21 (citing JA694).  There is no detail, let alone "great detail," on JA694.[9]

### 2.     The significant damages lie

Hosseini expressly justified termination with the assertion that Wannamaker-Amos's "poor performance has caused . . . significant financial damages.  Please initiate action as discussed."  JA43.  Wannamaker-Amos pointed out that Purem Novi could not support Hosseini's contemporaneous justification.  App. Br. at 13.

Purem Novi again tries to disavow a key issue after discovery debunked one of its claims.  Purem Novi now argues that "defective parts and production downtime [have] costs," that it did "not quantify" because Hosseini's claim that Wannamaker-Amos caused "significant financial damages" was not a reason for the termination. Resp. Br. at 16-17.  It cites and quotes nothing other than the Supporting Evidences Doc.  *Id.* at 16 (citing JA43).  That document specifically identifies the "significant financial damages" as a reason to "initiate action."  JA43.  And the only action Hosseini sought to "initiate" was termination.  App. Br. at 12 n. 10.

Purem Novi's efforts to recast the reason for termination create more disputed issues of material fact.  The "significant financial damages" issue is not merely one

---

[9]     Hosseini's reference to something not "mak[ing] sense" on JA694 was to a statement Hosseini claims he made to Wannamaker-Amos.  JA694:11-12 ("I asked her for these reports. · She·gave it to me and I said this doesn't make sense."). Wannamaker-Amos disputed this account.  JA171 ¶ 102.

about "quantifying" costs.  Purem Novi cannot identify any.  Purem Novi's efforts to walk back a contemporaneous justification for termination highlights a disputed issue of material fact.  *EEOC v. Town & Country Toyota*, *Inc.*, 7 F. App'x. 226, 233 (4th Cir. 2001) ("Contradictions between an employer's proffered explanation and the contemporaneous statements of the employer are convincing evidence of pretext.").

**B.     Legal Issues in dispute**

**1.     The inherent conflicts in the prima facie and pretext findings**

Purem Novi cannot resolve the inherent conflicts in the District Court's Order. See App. Br. at 28-30.     Both the District Court and Purem Novi focused on Wannamaker-Amos's purported failure to send a countermeasure response that Hosseini allegedly helped to draft.     JA733-34; Resp. Br. at 14 ("Wannamaker-Amos's employment was terminated for her failure to respond to Hyundai as required."); *see also id.* at 21-22; *id.* at 29 ( "Wannamaker-Amos's unjustified failure to respond to Hyundai's January 7, 2020 email undoubtedly constitutes a legitimate, non-discriminatory business reason.")

Yet the District Court specifically found that Wannamaker-Amos provided evidence that "she did not have the information she needed yet from Alabama[,] and she was never instructed to send the response to Hyundai's email."  JA729.  The District Court concluded: "[G]enuine issues of material fact remain given the above-

13

described disputes about whether the plaintiff was meeting the defendant's legitimate expectations." JA730. Those "above-described disputes" include the *evidence* that Wannamaker-Amos "did not have the information she needed yet from Alabama[,] and she was never instructed to send the response to Hyundai's email." JA729.

To mitigate the contradiction, Purem Novi asserts that the District Court did not view this as "evidence" but only as "Wannamaker-Amos's 'explanation' for . . . poor performance." Resp. Br. at 34. But Wannamaker-Amos's factual assertions are evidence. Further, the prima facie analysis focuses solely on evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 527 (1993) ("a prima facie case only requires production of enough evidence to raise an issue for the trier of fact"); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981) (in determining pretext, court and jury "may consider evidence previously introduced by the plaintiff to establish a prima facie case").

As *Guessous* illustrates, contradictions between prima facie and pretext findings require reversal. App. Br. at 30. Purem Novi offers nothing to reconcile the inherent inconsistency in the District Court's reasoning for granting the Motion.

2.    **Purem Novi seeks to establish an unprecedented new element for discrimination claims.**

Purem Novi declares: "Wannamaker-Amos must proclaim that she was actually discriminated against . . . ." Resp. Br. at 4; see also *id.* at 44-47. She "must proclaim" it? Says who? Not this Court. Not any court.

Worse than being unsupported, Purem Novi's arguments are contradictory and self-defeating. Purem Novi correctly argues that a plaintiff's "unsupported opinions, conjecture, or assumptions" are not evidence and have no effect. Resp. Br. at 46. On this point, the parties agree. But that gate swings both ways. Speculation is speculation no matter which party benefits from it. *See*, *e.g.*, *Carter v. Telecare Corp.*, No. CV 18-10748-RGK (PLAx), 2019 U.S. Dist. LEXIS 215165, at *9 (C.D. Cal. Aug. 16, 2019) (permitting questions about The plaintiff's understanding because she "was not asked . . . to offer a legal conclusion as to whether she had been discriminated against by defendant.")[10]

Plaintiffs are nothing more than fact witnesses. Few have ever claimed to be telepathic. It would be disastrous and unprecedented for this Court to require now

---

[10]    Not even experts can opine as to a defendant's discriminatory motive. *Hiramoto v. Goddard Coll. Corp.*, 184 F. Supp. 3d 84, 97 (D. Vt. 2016); *accord Kelleher v. Fred Meyer Stores*, *Inc.*, No. CV-13-3108-SMJ, 2015 U.S. Dist. LEXIS 10576, at *25 (E.D. Wash. Jan. 28, 2015).

that plaintiffs speculate about motive while also rejecting such speculation.[11] All that is required is that those representing a plaintiff provide sufficient evidence to support an inference of discrimination.  The plaintiff's only obligation is to provide *fact* testimony.

When asked *fact* questions, Wannamaker-Amos answered them.  For example, as to the white males, counsel for Purem Novi asked: "[D]o you feel that [Hosseini] treated them differently," to which Wannamaker-Amos replied, "yes." JA541:18-20.  When asked, however, about Hosseini's *motive* for doing so, Wannamaker-Amos properly responded that she "can't answer."  JA541:21-22. That's true.  Wannamaker-Amos cannot testify about Hosseini's thought process, but she can testify factually about her observations of disparate treatment.  And she did.

But Purem Novi does more than make arguments lacking any legal authority. Purem Novi also mischaracterizes the Record to provide an imaginary basis for its

---

[11]    Congress crafted civil rights legislation to protect everyone, and not just those with the wherewithal to debate lawyers about how evidence might indicate intent on the part of an opposing party.  Consider, for example, the case where the Undersigned represented an individual in an ADA harassment case.  The plaintiff not only had several learning disabilities, but he also suffered from a traumatic brain injury.  Much of his case was constructed from eye-witness testimony of co-workers, who described the abuse he suffered.  *Pelkey v. White Oak Mgmt.*, Civil Action No. 0:18-00967-JMC, 2020 U.S. Dist. LEXIS 45321, at *2 n.1 (D.S.C. Mar. 13, 2020). The plaintiff in that matter never would have been able to understand, let alone answer, questions about the harasser's intent.  He certainly had no ability to grasp the concept of what law(s) governed his case.

non-existent legal argument.  Purem Novi argues, for example, that Wannamaker-Amos fails to specify the basis for discrimination.  Resp. Br. at 15 (citing JA529 & JA540).  Even if that was a proper question, it was not what Purem Novi asked.  See JA529:16-20 (after asking whether Wannamaker-Amos "fe[lt] like [she] was discriminated against," counsel asked "why do you feel that way" without asking for a specific motive like sex, race, or age).  Likewise, at JA540 the question was "Do you feel discriminated against based on anything in particular."  Resp. Br. at 540:15-17.  That also is not a question about the underlying motive or basis for discrimination (e.g., race, sex, age).

Likewise, Purem Novi claims that Wannamaker-Amos "admits that she is not sure if she was discriminated against because of her race or sex."  Resp. Br. at 16 (citing JA542, JA543).  Purem Novi only asked about an example of Hosseini blaming her for a PC&L manager not moving parts.  JA542:21 – 543:4.

Purem Novi also claims incorrectly that Wannamaker-Amos "described all of the conduct she considers to be 'discriminatory' in nature."  Resp. Br. at 15.  Wannamaker-Amos never said that, and Purem-Novi never asked that.  The cited question was "why do you feel that way" in response to Wannamaker-Amos's statement that "I feel like they were all turning on my back as far as [Hosseini] was concerned."  JA529:18-20.  Wannamaker-Amos answered a limited question about

17

why she had "a general feeling that for any failure [Hosseini] would come to me." JA530:7-8.

When questioned as to other reasons she felt discriminated against (JA530:19-20), Wannamaker-Amos cited: (1) that Hosseini wanted her fired (JA530:21; see App. Br. at 5-6); (2) Hosseini's comments to Nespeca (JA531:6-10; see App. Br. at 5); (3) Hosseini's treatment of her, which differed from everyone else (who were all white) in terms of being blamed for customer complaints JA531:14-533:25; *see* App. Br. at 6-7, 9); and (4) Wannamaker-Amos was blamed for improper use of software, which she was using correctly but that Hosseini falsely assumed she wasn't (JA538:1-5; JA538:15-17; *see* App. Br. at 6).

Purem Novi never followed up by asking for any other examples. Even if Wannamker-Amos were competent to do so, she never stated that her legal claims were limited to these examples. Again, that is not for her to say.

### 3.    Purem Novi's prima facie argument

Purem Novi still argues that Wannamaker-Amos cannot show that her performance met Purem Novi's reasonable expectations for several months preceding her termination. Resp. Br. at 27-28. Purem Novi's insistence that Wannamaker-Amos performed poorly for months contradicts its assertions that the issues are immaterial. *Supra* § I(A)(1)(a); see Resp. Br. at 21.

18

Purem Novi praised Wannamaker-Amos, especially her efforts with Hyundai. App. Br. at 5, 8. But now Purem Novi claims that she was "not qualified" and was "subverting or altogether ignoring Purem Novi's quality systems over the period of several months." Resp. Br. at 23.[12] Unqualified and subversive. That is quite a departure from the contemporaneous praise that Wananmaker-Amos was "a beast." App. Br. at 8. Such departures evidence pretext. *Monroe v. Burlington Indus.*, 784 F.2d 568, 572-73 (4th 1986).

The District Court correctly cataloged the many disputed facts about the "months" of what Purem Novi now calls "subversion." JA729-30. The District Court found such disputed evidence sufficient to create genuine issues of material fact even if one does not consider Shollack's testimony. *Id.* at 730.

But this Court may consider Shollack's testimony along with the reasons cited by the District Court. To avoid the effect of Shollack's testimony, Purem Novi argues that this Court should improperly weigh evidence and disregard it because Shollack was Wannamaker-Amos's only corroborating witness. Resp. Br. at 10 n. 2. How ironic. While a high-level executive testified for Wannamaker-Amos, *nobody* corroborated a single claim made by Hosseini. If corroboration were the touchstone of credibility, Wannamaker-Amos wins. But credibility cannot be

---

[12] Again, one has to wonder how Hosseini, who spent the same months purportedly focusing 70% of his time on Hyundai, never addressed the purportedly egregious acts of subversion and the ignoring of key quality processes.

19

resolved under Rule 56, so Purem Novi loses this battle anyway. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . .")

### 4.    Pretext issues

### a.    Purem Novi inappropriately argues pretext plus.

Purem Novi argues that an issue of fact as to the truth of Purem Novi's purported reason is not enough to show pretext. Resp. Br. at 31-32. By editing *Reeves*, Purem Novi improperly seeks to resurrect "pretext plus." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 727 (4th Cir. 2019) ("In 2000, the Supreme Court in *Reeves* resolved the circuit split and abrogated this court's pretext-plus standard."); see *id.* at 726-27 (chiding the employer for attempting to "ratchet up the legal standard" by arguing pretext plus).

The *Reeves* Court and this Court have been clear: "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000); *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) ("Absent such evidence [precluding a finding of discrimination], courts may not require a plaintiff who proves both a prima facie case and pretext to produce additional proof of

20

discrimination in order to survive a defendant's motion for summary judgment.").
Recently, this Court again clarified:

> [T]o show pretext, a plaintiff may show that an employer's proffered
> nondiscriminatory reasons for the termination are inconsistent over
> time, false, or based on mistakes of fact. **Once the plaintiff offers such
> circumstantial evidence, the case must be decided by a trier of fact
> and cannot be resolved on summary judgment**.'"

*Sempowich v. Tactile Sys. Tech.*, *Inc.*, 19 F.4th 643, 652 (4th Cir. 2021) (emphasis
added) (quoting *Haynes v. Waste Connections*, *Inc.*, 922 F.3d 219, 225 (4th Cir.
2019)); accord *Westmoreland*, 924 F.3d at 726-27; *id.* at 728 ("In *Reeves*, the
Supreme Court held that an employee could create a jury issue solely by establishing
a prima facie case and then offering evidence as to the falsity of the employer's
proffered reason.").

### b.    Purem's "super personnel department" argument

Purem Novi also leans on pre-2000 case law to argue that this Court may not
"second-guess Purem's decision." Resp. Br. at 30-31 (citing *Dejarnette v. Corning*,
*Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)); *see* W*estmoreland*, 924 F.3d at 729
(referring to *DeJarnette* as a "case from the pretext-plus era").[13]  Wannamaker-
Amos never asked this Court to "second-guess" whether the failure-to-respond to a
customer can be grounds for discipline or discharge. That is not the issue. The issue

---

[13]    Purem Novi improperly makes this argument in the second step of the
*McDonnell Douglas* analysis.  Any challenge to the employer's rationale this should
be argued in the context of pretext (*i.e.*, the third step).

21

is whether the purported failure to respond was Purem Novi's reason for terminating Wannamaker-Amos. It is the exclusive province of the jury to make this determination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

The "super personnel department" rationale has no role in deciding whether the employer is being truthful about its reasoning:

> We are not free to substitute criteria of our own. But Sempowich has done more than challenge the criteria or merits of Tactile's evaluations. Sempowich has done what the plaintiff in *Hawkins* failed to do — "supply evidence that [her employer] actually believed her performance was good." *Id.* at 279 (emphasis added). This evidence is the employer's own words and actions — the performance ratings, awards, salary raise, and equity grant. Each of these pieces of evidence indicates that Tactile not only thought that Sempowich was performing satisfactorily, but that her performance was of such a high quality that it deserved repeated praise.

*Sempowich*, 19 F.4th at 653; *Westmoreland*, 924 F.3d at 728 n.4 (noting the inapplicability of "super personnel department" principle to pretext analysis); *see also Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).[14]

---

[14]     Purem Novi does what employers often do in quoting *Dejarnette* and its progeny. Defendant fails to quote to the entire rationale. In *Dejarnette*, the Fourth Circuit properly qualified its statement about not second-guessing employer rationales: "Our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory. . . . [I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, **so long as it truly was the reason for the plaintiff's termination**." *Dejarnette v. Corning, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (emphasis added).

### c. Wannamaker-Amos has provided sufficient evidence that she did not fail to respond to Hyundai.

Purem Novi again argues that Wannamaker-Amos cannot show pretext because she performed poorly and ignored an instruction to send a countermeasure. That issue is discussed above in Section I(A)(1)(b).

### d. Purem Novi cannot explain away the falsity of its assertion about the production logs.

Purem Novi cannot deny the falsity of its claim that Hosseini discovered quality issues by looking at production logs. See App. Br. at 42. Instead, Purem Novi argues that, when evaluating the veracity of the employer's reason (pretext), words don't matter. Resp. Br. at 39 ("A label applied to evidence at the EEOC stage is not suggestive of pretext."). Purem Novi could never cite authority that the falsity of a statement "is not suggestive of pretext." Every pretext case turns on whether the employer's statements are false. That includes statements made to the EEOC. *Lange v. Anchor Glass Container Corp.*, No. 22-2902, 2023 U.S. App. LEXIS 17453, at *6 (7th Cir. July 11, 2023); *Burton v. Freescale Semiconductor*, *Inc.*, 798 F.3d 222, 239-40 (5th Cir. 2015); *Castro v. DeVry Univ.*, *Inc.*, 786 F.3d 559, 574 (7th Cir. 2015); *Jones v. National Am. Univ.*, 608 F.3d 1039, 1046 (8th Cir. 2010); *see EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001) (failure to disclose a purported decision-maker's involvement at the EEOC stage raises issue of fact as to pretext); *cf. Haynes*, 922 F.3d at 226 n. 2 (recognizing conflict between reason

23

given in litigation and the employer's failure to disavow a different reason before the unemployment agency).

### e. Purem Novi's sleight of hand cannot explain away its claim that Wannamaker-Amos caused it to ship bad parts.

Purem Novi previously relied on the debunked claim that Wannamaker-Amos caused it to ship bad parts. App. Br. at 42-43. Purem Novi now argues that Wannamaker-Amos cannot prove that bad parts were not shipped. Resp. Br. at 39-40. Faulting Wannamaker-Amos for not proving a negative is slick, but it misses the point. The issue is whether Wannamaker-Amos caused Purem Novi to ship bad parts, not whether bad parts shipped. And Purem Novi conceded that the pertinent issues cited by Hosseini would not cause the shipment of bad parts. App. Br. at 26-27.

The District Court did not reject Wannamaker-Amos's argument about Purem Novi's concessions. Instead, it created a different argument about failure-to-inspect. *See* App. Br. at 43. The District Court reasoned *sua sponte* that Wannamaker-Amos's counsel did not ask whether the failure to have first-off inspection could result in the shipment of faulty parts. But there was no evidence of any failure to have the process in place.[15] Wannamaker-Amos cannot know if production always

---

[15]    That Hosseini witnessed an isolated incident at a first-off inspection station is compelling evidence that Wannamaker-Amos had the system in place. *See*, *e.g.*, JA47 (picture showing that the process was in place).

followed the process. Nor can she possibly know if somebody once removed a sample part. *Id.* at 16-17. Further, the one incident in production that Hosseini claims to have witnessed did not even relate to the product at issue. *See id.*; see also JA47 (picture of station labeled "UCC 1ˢᵗ Piece").

Purem Novi goes further off track in arguing that Wannamaker-Amos testified that Purem Novi terminated her because of program issues, and not because of any failure to respond. Resp. Br. at 14. Everyone agrees that Hosseini blamed Wannamaker-Amos for Hyundai's complaint about Hosseini (and two other executives). Further, Wannamaker-Amos has always contended that she was not actually fired for any failure to repond because she did not fail to respond.

Again, Wannamaker-Amos cannot testify as to anyone else's thought processes or motives. *Supra* § I(B)(2). More directly, Purem Novi knew that the allegations Hosseini cobbled together to blame Wannamaker-Amos for the program issues were false. That's pretext, pure and simple. Wannamaker-Amos never said she caused any problems, and the program issues are illusory.

### f. Purem Novi cannot distinguish *Cowgill* or this Court's other authorities on pretext.

Purem Novi argues that *Cowgill* is distinguishable because Hosseini never disciplined any other employee in his seventeen years at Purem Novi. Resp. Br. at 36. But that is the ultimate point. Hosseini treated Wannamaker-Amos differently.

Purem Novi's fixation on Hosseini's claimed practice also does not address the correct standard. Failure-to-warn pretext cases focus on the *company*'s procedures and policies, not on the individual's claimed practices. *See Cowgill v. First Data Techs.*, *Inc.*, 41 F.4th 370, 383 (4th Cir. 2022) (noting the materiality of whether "First Data engaged in a disparate application of its progressive discipline"); *Westmoreland*, 924 F.3d at 728 (finding issue of pretext in part because "company policy permitted TWC to impose other, less severe sanctions for Westmoreland's alteration of the one-on-one report")[16] For the same reason, Purem Novi's citation to the District Court's reasoning that Hosseini did not deviate from his usual method of discipline is unavailing. Resp. Br. at 37; JA728.

That said, the rationale raised by the District Court is simply wrong. Hosseini deviated greatly from his "usual method of disciplining." His usual method was to not issue any discipline. The white (mostly male) employees received no discipline even though they had exponentially more quality complaint issues, including repeat issues. App. Br. at 9. By contrast, Wannamaker-Amos – a female and the only black – was fired. If that is not a deviation from the "usual" practice, what is?

---

[16] Purem Novi's misplaces reliance on a 2014 district court case that predates Westmoreland and Cowgill. Resp. Br. at 37.

If Purem Novi retorts that quality issues are irrelevant, then only one question remains:  Did Wannamaker-Amos fail to send a countermeasure that Hosseini drafted?  Either way, disputed issues of material fact abound.

*Cowgill* provides examples of the established means by which plaintiffs may prove pretext.  These include deviation from company policy, relying on issues not raised at the time, and the skipping of disciplinary steps provided in the employer's policy.  These examples have been established in numerous cases from this Court.  And they all apply here.  App. Br. at 31-35.

## g.    Purem Novi's argument that Hosseini was not building a file

Purem Novi argues that there is no evidence that Hosseini was building a file on Wannamaker-Amos because Hosseini discussed the issues with Wannamaker-Amos.  Resp. Br. at 36.  But Wannamaker-Amos testified that Hosseini never discussed purported performance deficiencies with her.  *See*, *e.g.*, *supra* n. 6.  Whether Hosseini discussed the issues he cited with Wannamaker-Amos is just one of many disputed factual issues that even Purem Novi recognizes as material.

For different reasons, the parties agree that "this is not a situation in which the plaintiff committed 'one infraction that did not require termination.'" Resp. Br. at 36 (quoting App. Br. at 42 (citations omitted)).  But that statement is only true

27

because Wannamaker-Amos committed *no* violations of Purem Novi policy.[17]  Once again, Purem Novi bases its apparent argument that Wannamaker-Amos committed multiple infractions on evidence that Purem Novi now argues is not material.  Resp. Br. at 21.  And again, Purem Novi can only point to evidence that the District Court correctly recognized is sharply disputed.  JA279-30.

### h.    Purem Novi's stray remark argument

Purem Novi tries to diminish Hosseini's racist comments by characterizing them as a single, stray remark made by someone who, in a reply brief affidavit, now claims to identify as a "person of color."  Resp. Br. at 4.   There is no evidence that Hosseini so identified when saying that blacks are lazy, or that he has ever identified as black.  But that would not matter in any event.[18]

Evidence should be viewed holistically, and not with each piece viewed in isolation.  App. Br. at 44, 48.  Hosseini's comments, while not direct evidence, are among the circumstantial evidence that would permit a reasonable jury to conclude that his actions reflect his repugnant view of blacks.  *Rowland v. Am. Gen. Fin.*, *Inc.*,

---

[17]    Even if Purem Novi thought she did, it bypassed its own progressive discipline policy, which is another indicia of pretext.  App. Br. at 31-34.

[18]    *Oncale v. Sundowner Offshore Servs.*, *Inc.*, 523 U.S. 75, 78-79 (1998) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of that group.")

340 F.3d 187, 193 (4th Cir. 2003); *Worldwide Network Servs.*, *LLC v. DynCorp Int'l*, *LLC*, 365 F. App'x 432, 444 (4th Cir. 2010).

## II.  CONCLUSION

For these reasons and those set forth in Wannamaker-Amos's Brief of Appellant, this Court should vacate the District Court's Order and entry of Judgment and remand for trial.

> For the Appellant:
>
> s/ Brian P. Murphy
> Brian P. Murphy
> Stephenson & Murphy, LLC
> 207 Whitsett Street
> Greenville, SC 29601

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. _____     Caption: _____

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.    Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

      [  ]   this brief or other document contains _____ [*state number of*] words

      [  ]   this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

      [  ]   this brief or other document has been prepared in a proportionally spaced typeface using
           _____ [*identify word processing program*] in
           _____ [*identify font size and type style*]; **or**

      [  ]   this brief or other document has been prepared in a monospaced typeface using
           _____ [*identify word processing program*] in
           _____ [*identify font size and type style*].

(s)_____

Party Name_____

Dated:_____